**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 29 2012, 9:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SYLVIA BROWN HOUSE**
Elton D. Johnson and Associates
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE MATTER OF A.J.J.: ) | |
| ) | |
| J.J. ) | |
| ) | |
|     Appellant-Plaintiff, ) | |
| ) | |
|       vs. ) | No. 71A03-1112-JP-568 |
| ) | |
| S.H., ) | |
| ) | |
|     Appellee-Defendant. ) | |
| ) | |

INTERLOCUTORY APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable Peter J. Nemeth, Judge
Cause No. 71J01-9502-JP-89

**August 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Almost fifteen years after A.J.J.'s paternity was established, J.J. ("Father") sought to disestablish paternity. Though initially successful, in September 2010, the trial court reestablished Father's paternity and ordered him to pay child support for A.J.J. Father later sought to terminate his child-support obligation. In September 2011, the trial court dismissed Father's motion to terminate support, concluding that Father was improperly challenging the 2010 order reestablishing paternity. The trial court concluded that the proper method for Father to challenge the 2010 order was to file an appeal with this Court, which he did not do. We conclude that Father failed to appeal the 2010 reestablishment of paternity and cannot now challenge this order by appealing the September 2011 order of the trial court. We affirm.

**Facts and Procedural History**

S.H. ("Mother") and Father had a brief sexual relationship, and in March 1994, Mother gave birth to a son, A.J.J. One year later, Mother filed a paternity action claiming that Father was A.J.J.'s biological father. The trial court held a hearing on Mother's petition on March 14, 1995. Father did not appear at the hearing, and the trial court entered default judgment. The court entered an order establishing paternity and requiring Father to pay $35 per week in child support.

In August 1998, Father filed a motion for relief from the paternity judgment, alleging, among other things, that he did not receive notice of the paternity action and that he did not believe A.J.J. was his child. Father also requested genetic testing. After a hearing, the trial court denied Father's motions.

During the ten years that followed, the parties returned to court many times over child support, parenting time, and custody issues. In 2008, because of the ongoing custody dispute, the trial court referred the parties to the Domestic Relations Counseling Bureau for a custody evaluation and mediation. Mediation was unsuccessful, and when the parties returned to court in August 2009, Father's counsel reported that the parties had discussed the fact that Father might not be A.J.J.'s biological father. This led to genetic testing that excluded Father as A.J.J.'s biological father. At that time, Father and Mother asked the trial court to terminate Father's child-support obligation. In October 2009, the trial court entered an order disestablishing paternity.

The State filed a motion for relief from judgment, arguing that Father's first request for relief from judgment and genetic testing was denied in 1998 and that Father's 2009 request that support be terminated was an attempt to "re[-]litigate the merits of his motion filed in 1998" and was barred by claim preclusion. Appellee's App. p. 20. Noting that "over the years, [F]ather continued to pay support, exercise parenting time, and even had custody of the child for several years," the State asked the trial court to reestablish paternity and reinstate Father's child-support obligation. *Id.* at 19.

The trial court held a hearing on the State's motion on September 29, 2010. The State, Father, and Father's counsel were present. Father's counsel argued that the 1998 denial of his request for genetic testing did not preclude the disestablishment of paternity in 2009 because the genetic testing proved that there was fraud or mistake of fact that warranted relief. The trial court disagreed, concluding that Father's argument was barred by claim preclusion, and entered an order the same day granting the State's motion for

3

relief from judgment and reestablishing paternity. *Id.* at 22. The trial court set a hearing for October 25 to determine Father's child-support obligation.

Father was present at the October 25 hearing and said that he planned to hire a new attorney named Jeffery Levy from Chicago to represent him. Father also told the court that he planned to appeal the court's September 29 order reestablishing paternity. The court told him that he had thirty days to appeal from that order and warned him that only five of the thirty days remained. Tr. p. 5.[1] The court explained that if Father did not appeal within thirty days, "You're done. There's nothing you can do, period," and the following exchange occurred:

FATHER: Okay. No problem with that.

THE COURT: Well, it is a problem if you don't do it.

FATHER: I'm going to do it, I'm going to take care of it.

THE COURT: Okay. Any lawyer that you hire has got to do the proper paperwork. It is—it is not a simple procedure. So make sure you got—you know, if your lawyer's done appeals in the state of Indiana he's going to know what to do. If he's never done them, you may want to get a lawyer in South Bend who's done appeals in Indiana.

FATHER: Well he's done appeals before.

THE COURT: Okay.

FATHER: Yeah.

THE COURT: And he's got the cause number and he's going to do it?

FATHER: Yes.

---

[1] This citation refers to the transcript of the October 25, 2010, hearing.

*Id.* at 5.  The court then heard testimony on the parties' finances for the purpose of establishing a new child-support order.  The court ordered Father to pay $56 per week in support and $4 per week toward his arrearage.  Despite the trial court's warning, Father did not appeal the September 29 order reestablishing paternity.

In April 2011, the State filed a rule to show cause alleging that Father had failed to pay support.  In July, Father filed a motion to dismiss the State's rule to show cause and a motion to terminate his child-support obligation because genetic testing had proven that A.J.J. was not his biological child and thus "Mother's previous assertion that [Father] is the biological father of [A.J.J.] is either due to fraud or mistake of fact."  Appellee's App. p. 25.  Father concluded that he was entitled to relief under Indiana Code Section 31-14-11-23, which provides that if a court vacates a finding of paternity based on fraud or mistake of fact, the support obligation and any arrearage also terminates.  Ind. Code. § 31-14-11-23.

The trial court held a hearing on the pending motions in July, and Father submitted a memorandum of law in support of his motion.  On September 26, 2011, the trial court entered an order denying Father's motions:

> The Court finds that [the September 29, 2010] order sets forth a "final judgment" as contemplated by Indiana Rule of Appellate Procedure 9. Accordingly, the Court finds that the proper course of action would have been for Father to appeal the Court's ruling of September 29, 2010.  As no such appeal was filed, the Court's Order of September 29, 2010 stands.

Appellee's App. p. 60.[2]  Father now appeals.

**Discussion and Decision**

---

[2] Because the September 26, 2011, order from which Father appeals is not included in his Appellant's Appendix, we cite the order as included in the Appellee's Appendix.

5

On appeal, Father challenges the trial court's reestablishment of his paternity of A.J.J. Father frames his contentions as due process and public policy claims rather than as fraud or mistake of fact claims as he previously argued. However, all of Father's contentions flow from the trial court's September 29, 2010, order reestablishing paternity of A.J.J. Critically, Father appeals from the September 26, 2011, order. The September 26, 2011, order dismissed Father's motions and found that the proper course of action for Father was to appeal the September 2010 order. That is, rather than waiting until July 2011 to file motions to dismiss the State's rule to show cause and terminate his child-support obligation, Father should have appealed the September 2010 order reestablishing his paternity.

The trial court treated Father's July 2011 filings as motions for relief from judgment. The burden is on the movant to establish grounds for Trial Rule 60(B) relief. *In re Paternity of P.S.S.*, 934 N.E.2d 737, 740 (Ind. 2010). A Rule 60(B) motion is addressed to the equitable discretion of the trial court, and the grant or denial of the motion will be disturbed only when the trial court has abused its discretion. *Id.* at 740-41. An abuse of discretion will be found only when the trial court's action is clearly erroneous, that is, against the logic and effect of the facts before it and the inferences which may be drawn therefrom. *Id.* at 741.

Notably, Father's July 2011 motions alleged that he was entitled to relief because genetic testing had revealed fraud or mistake of fact. It is well settled that that a motion for relief from judgment under Trial Rule 60(B) cannot be used as a substitute for a direct appeal, nor can it be used to revive an expired attempt to appeal. *Perkins v. State*, 718

6

N.E.2d 790, 792 (Ind. Ct. App. 1999) (citing *Snider v. Gaddis*, 413 N.E.2d 322, 324 (Ind. Ct. App. 1980)).

The sequence of events in this case shows that the trial court's September 26, 2011, order dismissing Father's motions was proper. The trial court disestablished paternity on October 16, 2009. The State sought relief from this judgment and asked the trial court to reestablish paternity, and the trial court granted the State's motion on September 29, 2010. The September 2010 order was a final appealable order that reestablished Father's paternity of A.J.J. *See* Trial Rule 60(C). Father had thirty days to appeal this order. *See* Ind. Appellate Rule 9(A)(1). The trial court explained this to Father at the hearing on October 25, 2010, and warned him of the consequences if he failed to appeal the September 2010 order. Father never appealed. Instead, in July 2011, he filed motions to dismiss the State's motion to show cause and terminate his child-support obligation. In this way, rather than by filing an appeal, Father sought to challenge the trial court's order reestablishing paternity. The trial court recognized that the proper course of action for Father to challenge this ruling was to appeal and dismissed his motions on September 26, 2011.

Despite the fact that Father appeals from the September 2011 order of the trial court, he never directly discusses that order or challenges the court's conclusion that the proper vehicle for his claims was an appeal to this Court. Father attempted to circumvent his failure to file an appeal of the September 2010 order by way of his July 2011 motions and now, on appeal, attempts to do the same by recasting his challenge to the

reestablishment of paternity as due-process and public-policy claims. Father has failed to

persuade us that the trial court's September 26, 2011, order was error.[3]

    Affirmed.

MATHIAS, J., and BARNES, J., concur.

---

[3] Because we resolve this issue as we do, we do not reach the additional claims raised by Father.